**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM MAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:24-cv-1386 |
| | ) | |
| v. | ) | Judge Marilyn J. Horan |
| | ) | Chief Magistrate Judge Patricia L. Dodge |
| OFFICER DONALD BURNSWORTH, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I. Recommendation

It is respectfully recommended that the Motion for Summary Judgment (ECF No. 84) filed by Defendants Officer Donald Burnsworth, Officer Andrew Higinbotham, Lieutenant Sean Dailey, Sergeant Matthew Farnam, Officer Dakota McWilliams, Officer Noah Wilson, and Officer Julian Tatum be denied in part and granted in part and that judgment be entered in their favor and this case be closed.

## II. Report

### A. Relevant Procedural History

Plaintiff, William May, is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"). He is proceeding *pro se* in this civil rights action, which he brought under 42 U.S.C. § 1983 against Defendants, each of whom was employed at SCI Fayette during the event in question in this lawsuit, which occurred on August 22, 2024, when Plaintiff was housed there.

Plaintiff's original complaint was docketed on October 15, 2024. (ECF No. 6.) The operative complaint is the Amended Complaint, which was docketed on June 20, 2025. (ECF No. 44.) After screening the Amended Complaint under the applicable provisions of the Prison

Litigation Reform Act ("PLRA"), the Court dismissed all claims that Plaintiff asserted in it except for the claims of excessive force and civil conspiracy asserted against the current Defendants in their individual capacities.[1] (ECF Nos. 64, 71.)

Following discovery, Defendants filed the pending Motion for Summary Judgment (ECF No. 84), supported by a Brief (ECF No. 85), a Statement of Material Facts (ECF No. 86), and Appendix of exhibits. (ECF Nos. 87, 89.) Plaintiff then filed a Response in Opposition to Defendants' Motion (ECF No. 90), a Response in Opposition to Defendants' Brief (ECF No. 91), a Response to Defendants' Statement of Material Facts (ECF No. 92), and Appendix of exhibits (ECF No. 93).

Plaintiff did not sign any of his filings opposing Defendants' Motion (ECF Nos. 90-93) under penalty of perjury or have them notarized.[2] Thus, the written statements Plaintiff made in them, standing alone, cannot create an issue of material fact for the purposes of evaluating Defendants' Motion. *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315-16 (3d Cir. 2019). The Court can consider those statements to the extent that they are supported by the evidence Plaintiff attached to his Appendix, however.[3] (ECF No. 93.) The Court also normally could consider

---

[1] In his filings opposing Defendants' Motion, Plaintiff repeatedly refers to a retaliation claim. He did not assert a retaliation claim in the Amended Complaint. Thus, there is no retaliation claim before this Court.

[2] In the Court's order directing Plaintiff to file a response to Defendants' Motion, it advised Plaintiff that his response may include opposing or counter-affidavits (executed by Plaintiff or other persons) which have either been sworn to under oath (notarized) or signed under penalty of perjury. (ECF No. 88.) The Court also provided this same advisement to Plaintiff in the case management order. (ECF No. 28.)

[3] This includes the documents Plaintiff submitted in opposition to Defendants' defense that he procedurally defaulted his claims, as well the declaration of Etienne Barksdale, which Barksdale signed under penalty of perjury. (ECF No. 93-2 at 16-17.) Barksdale was housed "two cells down"
*Footnote continue on next page…*

those statements if they are supported by the averments Plaintiff made in the Amended Complaint, which he did sign under penalty of perjury. *See, e.g.*, *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985). As explained below, however, even the averments Plaintiff made in the Amended Complaint cannot create an issue of fact with respect to the merits of Plaintiff's claims because the incident at issue in this case was videotaped, that video is part of the summary judgment record, and the events depicted in it contradict Plaintiff's version of events. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

### B. Facts

On the evening of August 21, 2024, Plaintiff fell from his bed and sought medical attention for a laceration on the back of his head. (ECF No. 86 ¶ 1.) The next day, on August 22, 2024, at least two officers were escorting Plaintiff back to his cell. When they were doing so, an incident occurred during which Plaintiff cut one or more of the officers with a razor blade. (ECF No. 86 ¶ 2; ECF No. 87-2 at 10; ECF No. 93-2 at 31-34.)

In an attempt to secure Plaintiff in his cell, the escorting officers deployed a burst of OC spray and called for a response team. (ECF No. 44 ¶¶ 20, 27, 32; ECF No. 93-2 at 16, ¶ 4.) Defendants reported to Plaintiff's cell. According to Plaintiff, during a strip search and before the handheld camera was turned on to record Plaintiff's cell extraction, Defendant Dailey directed that, once the strip search was completed, the response team officers were to "put [Plaintiff] down and

---

from Plaintiff's cell on August 22, 2024, and he avers that he heard some of what occurred during the incident at issue in this case. (*Id.*)

Plaintiff also references in his submissions a declaration of another inmate, Daaron Shears. No Shears' declaration is included in Plaintiff's Appendix, however. Although the Court is under no obligation to scour the docket to locate documents Plaintiff may be referencing in his submissions, the Court notes that earlier in this litigation Plaintiff did file a declaration by Shears, which was signed under penalty of perjury. (ECF No. 24.) Moreover, earlier in this case Plaintiff also filed his own declarations (ECF Nos. 20 and 25), which he signed under penalty of perjury. None of the averments made in Shears' or Plaintiff's declarations are relevant to the issues now before the Court.

fuck him up." (ECF No. 44 ¶ 22; ECF No. 93-2 at 16, ¶¶ 4, 7.) Plaintiff also maintains that upon entry into his cell Burnsworth tripped him and slammed him to the ground whereupon Defendants Burnwsorth, Higinbotham, Wilson, McWilliams, and Tatum "brutally" rushed onto him and began "punching and kicking [him] in the face, head, body and legal, and neck, with clear intent to cause him unnecessary pain and severe injury." (ECF No. 44 ¶¶ 22, 30-31, 44-45.)

The relevant events are depicted in the video recorded with a handheld camera and submitted by Defendants.[4] As noted above, because there is video evidence regarding the events at issue, the Supreme Court's holding in *Scott v. Harris*, 550 U.S. 372 (2007), is significant to the Court's analysis. In *Scott*, a videotape of the events at issue contradicted the plaintiff's allegations. *Id*. at 379-80. As the Court held: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. *See also Morgan v. Borough of Fanwood*, 680 F. App'x 76, 80 (3d Cir. 2017) ("when, as here, there is reliable video footage of the facts in the record, we view the facts in the light as depicted by the videotape.")

With this principle in mind, the Court has reviewed the video in the record. In relevant summary, it depicts the following:

A group of six officers (and the unseen camera operator) are outside Plaintiff's cell, preparing to extract him. Defendant Dailey describes the event before the extraction, including that Plaintiff had cut one of the officers who had escorted him back to his cell, and the subsequent

[4] Plaintiff refers to a second video, one allegedly from the security camera located in his pod ("LA-pod camera"). (ECF No. 92 ¶¶ 3-4.) No such video is included in the record before the Court. A video review checklist, submitted by Plaintiff, contains the reviewing officers' summarization of what the video from the LA-pod camera showed. (ECF No. 93-2 at 31.)

administration of OC spray. Officers then entered Plaintiff's cell and can be immediately seen on the floor with Plaintiff as they restrain Plaintiff's legs. As they are restraining him, the camera view is largely blocked by Dailey, who is positioned closest to the cell door, but the portion that is visible shows the officers' efforts to restrain Plaintiff. One officer can be heard directing Plaintiff to stop resisting. The only other audible communication from the officers is as to the status of the shackles. No officer appears to be in a position to kick Plaintiff or is seen doing so; further, no officer is seen raising his arms to punch Plaintiff. Another officer arrives outside the cell door.

In a little over one minute from the time those Defendants entered Plaintiff cell, they restrain Plaintiff and lift him to a standing position. They place a spit hood on Plaintiff and escort him out of the cell. Plaintiff is then taken to a nurse for evaluation and decontamination from the OC spray. There is blood dripping from Plaintiff's head, but a voice off-camera explains that he had a previous injury and Plaintiff agrees. Following decontamination, the nurse asks Plaintiff if he has any injuries to report and his response is "No. I don't have a right to do that now. I deserve what I got." Later, Plaintiff indicates that his wrists hurts. The nurse conducts a squeeze test on his hands and explains that she will inform the medical provider about his concern. The assessment continues and when asked if the laceration on his head was from a prior incident, Plaintiff nods in agreement. Plaintiff then states that there are no injuries related to this incident except the ones to his wrist.

On September 6, 2024, Plaintiff submitted Grievance #1107069 concerning the excessive force he claims he was subjected to when Defendants responded to his cell and extracted him on August 22, 2024. (ECF No. 87-3 at 1-2; ECF No. 93-2 at 5-6.) This grievance referenced Defendants Dailey, Burnsworth, and Higinbotham, as well as "multiple other officers" who were allegedly involved in the complained of excessive force. On September 9, 2024, the facility

grievance coordinator notified Plaintiff that an extension of time to respond to the grievance was being given to appropriately investigate the allegations Plaintiff made in the grievance. (*Id.* at 3.)

Months later, in a Request to Staff dated March 5, 2025, Plaintiff asked about the status of Grievance #1107069, noting: "It has been 6 months with no word at all." (ECF No. 93-2 at 21.) On March 7, 2025, a staff member advised Plaintiff that he would receive a response to the grievance once the Bureau of Investigation and Intelligence ("BII") completed its review of the matter and the appropriate officials were notified. (*Id.*) Then, in an initial review response to Grievance #1107069 dated that same day (March 7, 2025), Plaintiff was notified that the BII's "investigation determined there was no substantial evidence to support your allegations against staff" and that the grievance was denied. (*Id.* at 3.)

Defendants claim that Plaintiff "did not file an appeal of this response in accordance with DC-ADM 804[,]" which is the DOC's policy that governs its grievance system. (ECF No. 86 ¶ 15.) Defendants cite to no evidence in the record to support this assertion, however.

Plaintiff counters that he properly appealed the March 7, 2025, denial of Grievance #1107069 through all stages of the appeal procedure outlined in DC-ADM 804.[5] (ECF No. 92 ¶ 15.) Unlike Defendants, Plaintiff has submitted support for his exhaustion-related factual assertions. Specifically, Plaintiff has submitted documents that evidence that he appealed the denial of his grievance to the facility manager and that that appeal was denied on April 1, 2025. (ECF No. 93-2 at 9.) Plaintiff then appealed to SOIGA. This final-review level appeal was denied on May 27, 2025. (*Id.* at 2.)

---

[5] Under DC-ADM 804, which is available on the DOC's website (www.pa.gov), a prisoner whose grievance is denied can appeal that denial to the Facility Manager. If that appeal is denied, the prisoner then can seek final review by filing an appeal with the DOC's Secretary's Office of Inmate Grievances and Appeals ("SOIGA").

### C. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*

Once the moving party has met their initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp*., 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

**D. Discussion**

1. Defendants' Procedural Default Defense

The PLRA requires that prisoners exhaust their claims with respect to prison conditions through the prison's available administrative remedies procedure *before* they file a lawsuit asserting those claims. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner…*until* such administrative remedies as are available are exhausted.") (emphasis added).[6] The PLRA also requires "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means "complet[ing] the administrative review process in accordance with the applicable procedural

[6] The Supreme Court has held that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

rules." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford*, 548 U.S. at 88).

When a prisoner brings his lawsuit before he has completed exhaustion of his administrative remedies, the district court normally should dismiss the case *without prejudice* to him refiling his action after exhausting the administrative remedies process. *Garrett v. Wexford Health*, 938 F.3d 69, 81 n.16 (3d Cir. 2019) ("We note that we have allowed complaints filed prematurely to be dismissed without prejudice and then refiled when the administrative remedies were exhausted."); *Wyatt v. West*, 2026 WL 357800, at *2 (3d Cir. Feb. 9, 2026) ("a prisoner's complaint, filed pre-exhaustion of administrative remedies, 'should be dismissed without prejudice to its reinstatement [after exhaustion]'") (quoting *Ghana v. Holland*, 226 F.3d 175, 184 n.4 (3d Cir. 2000) (text added by *Ghana*)). But when a prisoner has not properly exhausted his administrative remedies and he can no longer to so under the prison's grievance system (because, for example, any attempt to do so would be denied as untimely under the applicable grievance policies), then the prisoner has procedurally defaulted his claims under the PLRA and the district court should dismiss his claims *with prejudice* for that reason. *See, e.g.*, *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (affirming dismissal with prejudice of the plaintiff's First Amendment claim because he failed to properly exhaust it).

The "failure to exhaust is not a jurisdictional defect," *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002), but when an exhaustion issue is raised by a defendant it constitutes a threshold issue to be addressed by the court. *See, e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

In their Motion, Defendants argue that Plaintiff's claims are *procedurally defaulted and, therefore, must be dismissed with prejudice* because he filed the original complaint prematurely

under § 1997e(a) (on or around early October 2024, when Grievance #1107069 was at the initial-review stage), and then subsequently failed to appeal the grievance officer's March 7, 2025, denial of that grievance. (ECF No. 85 at 4-5, 11.)

There is no dispute that Plaintiff had not exhausted his administrative remedies when he filed the original complaint. But to accept Defendants' argument that Plaintiff *procedurally defaulted* his claims would require the Court to also accept their unsupported factual assertion that Plaintiff did not appeal the denial of the grievance (ECF No. 86 ¶¶ 14-15), which the Court cannot do. The Court must view the evidence in the light most favorable to Plaintiff, and that evidence supports Plaintiff's contention that he properly appealed the denial of his grievance through the DC-ADM 804's final-review (SOIGA) level. Indeed, there is not even a genuine issue of disputed fact on this issue. The *only* evidence in the record is that which supports Plaintiff's position.

Thus, at most, the only consequence of Plaintiff bringing this lawsuit prematurely would be a dismissal of his claims *without prejudice*. But if the Court issued an order to that effect now, and because Plaintiff's claims are not time barred under the applicable statute of limitations,[7] Plaintiff could then immediately bring another action in this Court raising his claims once again. There is no precedential decision by either the Supreme Court or the Court of Appeals for the Third Circuit that holds that the PLRA mandates that such steps be taken at this stage of the litigation. In fact, the most recent non-precedential decision by the Court of Appeals to address a circumstance similar to that presented here supports that the conclusion that all that was required

[7] Plaintiff's claims, which accrued on August 22, 2024, are governed by a two-year statute of limitations. *Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019) ("Section 1983 has no statute of limitations of its own ... Rather, it borrows the underlying state's statute of limitations for personal-injury torts," which in Pennsylvania is two years.) (citing 42 U.S.C. § 1983; *Wallace v. Kato*, 549 U.S. 384, 387 (2007); 42 Pa. C.S. § 5524(1), (7)). The statute of limitations was tolled while Plaintiff exhausted his administrative remedies. *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598 (3d Cir. 2015).

in this case was for Plaintiff to file an amended or supplemental complaint once SOIGA denied his final-level appeal. *Wyatt v. West*, 2026 WL 357800, at *2 (3d Cir. Feb. 9, 2026) (vacating and remanding the district court's decision to grant the defendants' summary judgment motion for failure to exhaust administrative remedies and explaining: "We further conclude that, pursuant to [*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019)], the District Court should have considered allowing [the prisoner-plaintiff] to amend or supplement his complaint to cure the filing defect related to exhaustion, construed one of [his] five filings as a motion for leave to file a supplemental complaint, or *sua sponte* categorized on of his filings as a supplemental complaint.") (footnotes omitted). Thus, the Amended Complaint, which was filed on or around June 20, 2025 (ECF No. 44; *see also* ECF No. 86 ¶ 17), and after Plaintiff properly exhausted his claims through SOIGA's final-level review, likely cured Plaintiff's initial filing defect.

In any event, Defendants argued only that the Court should dismiss Plaintiff's claims with prejudice because he procedurally defaulted them. Their argument must be rejected under the evidence in the record. Thus, the Court should deny Defendants' Motion to the extent that they seek dismissal of Plaintiff's claims with prejudice based on their unsupported argument that he defaulted them.

2. <u>Merits</u>

Defendants alternatively argue that they are entitled to summary judgment on the merits of Plaintiff's excessive force and conspiracy claims. (ECF No. 85 at 5-11.) For the reasons that follow, the Court should grant Defendants' Motion in this regard.

a. <u>Excessive Force</u>

The central question in evaluating an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks*, 204 F.3d at 106 (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)).

It is undisputed that Defendants were members of the response team that came to Plaintiff's cell to extract him. They did so after the earlier incident between Plaintiff and a separate team of officers had resulted in one or more of those officers being injured with a razor. Plaintiff's excessive force claim is based on his allegations that Defendant Dailey directed the other Defendants to "put [Plaintiff] down and fuck him up" (ECF No. 44 ¶22; ECF No. 93-2 at 16, ¶¶ 4, 7), and then Defendants entered Plaintiff's cell and punched and kicked him with the intent to cause unnecessary pain and severe injury. (*Id.* ¶¶ 22, 31, 44-45.)

In contrast, Defendants assert that the use of force involved during the cell extraction was reasonable. (ECF No. 85 at 10-11.) Defendants assert that they quickly effectuated the restraint of Plaintiff and that both their demeanor and Plaintiff's condition belie his allegations of a vicious beating. (*Id.*)

As explained above, the Court views the facts in the light as depicted by the video. Although Defendant Dailey is not heard during the recording making any statements that would support the intent to use excessive force, Plaintiff asserts that he made that statement before the video started and during the strip search. (ECF No. 44 ¶22; ECF No. 93-2 at 16, ¶¶ 4, 7.)

The video shows Defendants entering the cell and restraining Plaintiff in around one minute or so. No punching or kicking is observed during the brief time that efforts to restrain Plaintiff took place. No injuries consistent with a brutal punching and kicking over a substantial period of time, as alleged by Plaintiff, were sustained. Plaintiff was taken to be seen by a nurse. While his head was bleeding, he acknowledged that this was as a result of his injury the day before, and not from the incident in question. His only complaint was that his wrists hurt as a result of tight restraints.

A review of the factors necessary to determine whether excessive force was used demonstrates that no reasonable jury could conclude that excessive force was applied. As shown by the video, the amount of force that Defendants used was reasonable and appropriate for the circumstances, and Plaintiff sustained, at most, discomfort in his wrists as a result of the restraints applied. Given what had occurred during the earlier incident between Plaintiff and the officers who had escorted him to his cell, during which time one or more of those officers were injured, there was a reasonable perception of threat to the safety of Defendants when they were extracting Plaintiff from his cell, and the efforts made to restrain Plaintiff were brief and appropriately targeted.

In conclusion, Plaintiff's version of the facts is contradicted by the video. Because no reasonable jury could view the video and conclude that the incident at issue in the case was conducted in an unconstitutional manner, Defendants are entitled to summary judgment regarding Plaintiff's claims of excessive force. The Court should therefore grant that part of Defendants' Motion seeking judgment in their favor on the excessive force claim.

b. Conspiracy

As the Court of Appeals has held, “a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right.” *Perano v. Township of Tilden*, 423 F. App’x 234, 239 (3d Cir. 2011); *see also Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). Because Defendants are entitled to judgment in their favor on the excessive force claim Plaintiff asserts against each of them, his claim that they conspired to subject him to excessive force necessarily fails. The Court should therefore grant that part of Defendants’ Motion seeking judgment in their favor on Plaintiff’s claims of conspiracy.

**E. Conclusion**

For the above-stated reasons, it is respectfully recommended that Defendants’ Motion for Summary Judgment be: (1) denied to the extent that they argue that the Court must dismiss his claims with prejudice because Plaintiff procedurally defaulted them; and, (2) granted to the extent that they argue that they are entitled to judgment in their favor on the merits on Plaintiff’s claims of excessive force and conspiracy.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Date: October 30, 2026

/s/ Patricia L. Dodge
PATRICIA L. DODGE
CHIEF UNITED STATES MAGISTRATE JUDGE